UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| JOHN M. LOWERY, | CIV. NO. 2:15-1590 WBS CKD |
|---|---|
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| v. | |
| Hon. Christopher A. Hart, Chairman, NATIONAL TRANSPORTATION SAFETY BOARD; and Loretta E. Lynch, Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendants. | |

----oo0oo----

Plaintiff John M. Lowery brought this action against the Chairman of the National Transportation Safety Board ("NTSB") and the Attorney General of the United States Department of Justice (collectively, "defendants") asserting violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff additionally seeks to set aside the judgment in a related case that plaintiff brought against NTSB in 1997 on the basis that

1

NTSB committed fraud on the court.  Defendants now move to dismiss plaintiff's eleventh cause of action for fraud on the court pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Docket No. 17.)

I.   Factual and Procedural Background

       The Piper Tomahawk ("Tomahawk") is a two-seat, single-engine aircraft used as a primary trainer for student pilots attempting to earn their basic private pilot's certification from the Federal Aviation Administration ("FAA").  (Anderson Decl. ¶ 4 (Docket No. 4).)  Plaintiff is an author of aviation safety articles who had published articles discussing the Tomahawk's purported tendency to spin and crash.  (First Am. Compl. ("FAC") ¶ 4 (Docket No. 16); Defs.' Req. for Judicial Notice ("RJN") Ex. 1 ("1998 Order") at 2 (Docket No. 10-2).)

       During the course of research in the 1990s for an upcoming article, plaintiff made a number of FOIA requests to the FAA and NTSB regarding the government's investigation into Tomahawk stall-spin accidents.  (1998 Order at 2.)  Plaintiff made four FOIA requests to NTSB seeking (1) documents regarding a 1994 Tomahawk crash in Kansas; (2) information regarding an August 1995 meeting between NTSB personnel and the Tomahawk's manufacturer in Vero Beach, Florida; (3) photographs of a Tomahawk experimental prototype and a videotape of Tomahawk stall-spin tests; and (4) documents regarding a 1995 Tomahawk crash in Indiana.  (Id.)

       In 1997, plaintiff filed a civil action in this court against the FAA and NTSB claiming that they violated the FOIA by

failing to conduct an adequate search for and furnish the requested documents.  (Id. at 2-3; FAC ¶ 5); see Lowery v. F.A.A., Civ. No. 2:97-15 WBS DAD (E.D. Cal. filed Jan. 3, 1997) ("1997 Action").  NTSB's air safety investigator Frank Gattolin had conducted NTSB's investigation into whether the Tomahawk had been properly spin-tested by its manufacturer during the certification process with the FAA.  (Anderson Decl. ¶¶ 4-5.) According to plaintiff, Gattolin testified at his deposition on September 30, 1997 that he did not possess the Tomahawk prototype photographs that plaintiff sought in the third FOIA request ("Third Request").  (FAC ¶ 95.)

Gattolin also submitted a declaration stating that, in early 1997, he gave all photographs that were related to Tomahawk stall-spin issues to NTSB attorney Jane Mackall, who worked at NTSB's Office of the General Counsel but was not counsel of record in the 1997 Action.  (See id. ¶¶ 30, 97.)[1]  In Mackall's own declaration, however, she stated that neither she nor Gattolin had such photographs.  (Id. ¶¶ 30, 96.)  Plaintiff alleges that as a result of these inconsistencies, the Magistrate Judge permitted plaintiff to depose Mackall and other NTSB personnel in Washington, D.C.  (Id. ¶ 31.)  Plaintiff alleges that he traveled to Washington, D.C. but was unable to depose Mackall because she had suddenly left town due to a family illness.  (Id.)  He states that he could not depose Mackall on a later date because "the Magistrate Judge's order placed a very

---

[1] Plaintiff alleges that five years later, in 2003, Gattolin contacted plaintiff and confirmed that he gave the prototype photographs to Mackall months before his September 30, 1997 deposition. (Id. ¶¶ 98-99.)

3

strict time limit to finish the depositions in Washington, D.C." and the court later denied his requests to extend the time for discovery. (Id. ¶¶ 31, 101.)

Plaintiff asserts that based upon Gattolin and Mackall's sworn testimony regarding the Tomahawk prototype photographs, he withdrew his FOIA claim concerning the Third Request. (Id. ¶¶ 101-103.) Plaintiff and NTSB subsequently filed cross-motions for summary judgment on plaintiff's claims regarding the first and fourth FOIA requests concerning the Tomahawk crashes in Kansas and Indiana. (Id.; 1998 Order at 2-3 & n.3.)[2] In March 1998, the court granted summary judgment in favor of NTSB, entered final judgment, and approved the parties' settlement agreement to waive their rights to appeal and bear their own costs and attorney's fees. (1998 Order at 11; RJN Exs. 2-3.)

Plaintiff alleges he later learned in 2008 that, three months before Gattolin's 1997 deposition, Gattolin had sent at least seven Tomahawk prototype photographs to former NTSB investigator George Anderson. (FAC ¶ 28; Anderson Decl. ¶¶ 2-9, Ex. 2.) Anderson states in a declaration that Gattolin then contacted him shortly after September 1997 and asked him to return the prototype photographs to Gattolin's home address. (Anderson Decl. ¶¶ 8-9.) Anderson represents that he was not aware at the time of any pending FOIA requests concerning the photographs and states that Gattolin did not inform him of any such requests. (Id. ¶ 10.)

---

[2] The court had separately granted the FAA's motion for summary judgment as to all claims against it. (1998 Order at 2.)

4

1    Plaintiff asserts that "Gattolin deliberately hid the
2 requested photos and used Anderson as his unwitting repository,
3 until immediately after the September 30, 1997 Deposition of
4 Gattolin, when he called Mr. Anderson and asked that the photos
5 be returned to Frank Gattolin's home address."  (FAC ¶ 92.)
6 Plaintiff claims that "NTSB, acting by and through its official
7 Frank Gattolin, committed fraud on the court in order to win the
8 case and obtain the favorable [1998 MSJ] order dismissing the
9 case, the judgment for Defendant NTSB, and the settlement
10 agreement wherein Plaintiff was forced to waive his right to
11 appeal in exchange for the government waiving its costs bill."
12 (Id. (citations omitted).)

13    On that basis, plaintiff has brought an independent
14 claim under Federal Rule of Civil Procedure 60(d)(3) seeking to
15 set aside the 1998 Order, the resulting judgment, and the
16 settlement agreement regarding the parties' rights to appeal and
17 attorney's fees and costs.  (Id. ¶ 104.)  Plaintiff also requests
18 that the court enter a new judgment for plaintiff in the 1997
19 Action and award him reasonable attorney's fees and costs in
20 pursuing that action and the present action.  (Id.)  Defendants
21 now move to dismiss plaintiff's claim to set aside the judgment
22 in the 1997 Action pursuant to Rule 12(b)(6) for failure to state
23 a claim upon which relief can be granted.

24 II.  Legal Standards
25    A.  Federal Rule of Civil Procedure 60
26    To preserve the finality of judgments, the Federal
27 Rules of Civil Procedure limit a party's ability to seek relief
28 from a final judgment.  Rule 60(b) enumerates six grounds under

5

which a court may relieve a party from a final judgment:

    (1)   mistake, inadvertence, surprise, or excusable neglect;

    (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (4)   the judgment is void;

    (5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

    (6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A motion seeking relief from a final judgment under Rule 60(b) must be made "within a reasonable time" and any motion under one of the first three grounds for relief must be made "no more than a year after the entry of the judgment." Id. R. 60(c)(1).

        Despite the limitations in Rule 60(b), courts have discretion pursuant to their "inherent equity power to vacate judgments obtained by fraud." United States v. Estate of Stonehill, 660 F.3d 415, 443 (9th Cir. 2011) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)). Rule 60(d)(3) preserves this inherent power and recognizes that Rule 60 does not limit a court's power to "set aside a judgment for fraud on the court." See also Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 780 (9th Cir. 2003) ("Federal Rule of Civil Procedure [60(d)(3)] preserves the district court's right to hear an independent action to set aside a judgment for fraud on the court."); Estate of Stonehill, 660 F.3d at 443 ("Rule [60(d)(3)], which governs

relief from a judgment or order, provides no time limit on courts' power to set aside judgments based on a finding of fraud on the court.").[3]

### B. Fraud on the Court

A court "must exercise the power to vacate judgments for fraud on the court with restraint and discretion, and only when the fraud is established by clear and convincing evidence." Estate of Stonehill, 660 F.3d at 443-44 (internal quotation marks and citations omitted). Relief for fraud on the court must be "reserved for those cases of 'injustice[] which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." United States v. Beggerly, 524 U.S. 38, 46 (1998) (citation omitted).

"A fraud on the court is an unconscionable plan or scheme which is designed to improperly influence the court in its decision." Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc., 682 F.2d 802, 805 (9th Cir. 1982) (internal quotation marks and citation omitted). The relevant inquiry is not whether fraudulent conduct "prejudiced the opposing party," but whether it "harmed the integrity of the judicial process." Estate of Stonehill, 660 F.3d at 444 (citation and alterations omitted).

---

[3] Prior to the amendments to the Federal Rules of Civil Procedure in 2007, the savings clause for fraud on the court was contained in Rule 60(b) and courts referred to Rule 60(b) as preserving a court's inherent power to set aside a final judgment for fraud on the court. As part of the stylistic amendments in 2007, the savings clause language was moved from subsection (b) to subsection (d). Compare Fed. R. Civ. P. 60(b) (2006) ("This rule does not limit the power of a court to entertain an independent action . . . to set aside a judgment for fraud on the court."), with Fed. R. Civ. P. 60(d)(3) (amended 2007) ("This rule does not limit a court's power to: . . . (3) set aside a judgment for fraud on the court.").

7

1  The Ninth Circuit has repeatedly emphasized that exceptions that
2  "would allow final decisions to be reconsidered must be construed
3  narrowly in order to preserve the finality of judgments." Abatti
4  v. Comm'r of the I.R.S., 859 F.2d 115, 119 (9th Cir. 1988); see
5  also Appling, 340 F.3d at 780; Dixon v. C.I.R., 316 F.3d 1041,
6  1046 (9th Cir. 2003).

A party "bears a high burden in seeking to prove fraud on the court." Pizzuto v. Ramirez, 783 F.3d 1171, 1180 (9th Cir. 2015). A finding of fraud on the court involves "far more than an injury to a single litigant." Estate of Stonehill, 660 F.3d at 444 (citation omitted). "Fraud on the court requires a 'grave miscarriage of justice,' and a fraud that is aimed at the court." Appling, 340 F.3d at 780 (quoting Beggerly, 524 U.S. at 47).

Perjury or non-disclosure by a party or witness "does not, by itself, amount to fraud on the court." Id. Non-disclosure or perjury by an officer of the court may amount to fraud on the court only if it was "so fundamental that it undermined the workings of the adversary process itself." Estate of Stonehill, 660 F.3d at 445; see also 11 Charles Alan Wright et al., Federal Practice and Procedure § 2870 (3d ed. 2014) ("[T]here is a powerful distinction between perjury to which an attorney is a party and that with which no attorney is involved . . . . [W]hether perjury constitutes a fraud on the court should depend on whether an attorney or other officer of the court was a party to it."). Non-disclosure or perjury by an officer of the court, however, does not rise to this level if it had a "limited effect on the district court's decision" and the withheld information would not have "significantly changed the

8

information available to the district court." Estate of Stonehill, 660 F.3d at 446.

III. Analysis

    A.   Alleged Fraud on the Court

As a threshold matter, plaintiff discovered the facts giving rise to his allegations of fraud on the court by at least 2008.[4] (FAC ¶ 28.) Despite alleging that the conduct at issue amounts to a "'grave miscarriage of justice,' and a fraud that is aimed at the court," Appling, 340 F.3d at 780 (quoting Beggerly, 524 U.S. at 47), plaintiff fails to explain why he simply waited at least seven years before even notifying the court that this alleged fraud was committed against it. There is no excuse – no excuse whatsoever – for such delay, and plaintiff's delay alone should preclude him from seeking the extraordinary relief of setting aside a settlement and judgment.

Even assuming plaintiff's inexcusable lack of diligence does not bar relief, the Ninth Circuit has emphasized that "in nearly all fraud-on-the-court cases, the misrepresentations went to the central issue in the case." Estate of Stonehill, 660 F.3d at 452. Here, however, plaintiff's allegations of fraud on the

---

[4] Plaintiff also alleges in his verified FAC that, in February 2004, he sent a letter to Attorney General John Ashcroft reporting that a certain NTSB employee had committed perjury: the same allegation that forms the basis of his fraud on the court claim here. (FAC ¶¶ 7-8.) Plaintiff's remaining causes of action here arise out of FOIA requests he made to the Department of Justice ("DOJ") and NTSB concerning his 2004 letter to Attorney General Ashcroft. (Id. ¶¶ 8-27, 34-90.) That plaintiff sent such a letter in 2004 confirms that he was aware at that time of the alleged facts upon which his claim of fraud on the court is predicated, and that he in fact waited eleven years to notify the court.

court are limited to alleged misconduct surrounding only the Third Request, which plaintiff had voluntarily withdrawn before the court rendered a decision in the prior case. The 1998 Order mentioned plaintiff's Third Request only in its background discussion referencing plaintiff's four original FOIA requests. (1998 Order at 2.) Immediately thereafter, the Order explicitly stated that "[o]nly requests One and Four are the subject of this action." (Id. at 2-3.) Plaintiff also admits that his cross-motion for summary judgment in that case "lacked any reference to FOIA # 3." (FAC ¶ 103.)

Because the Third Request and the prototype photographs were not at issue in the 1998 Order, it is not possible that the allegations surrounding the Third Request could have influenced or misled the court in its decision. See Appling, 340 F.3d at 780 ("Fraud on the court requires . . . a fraud that is aimed at the court."); Phoceene Sous-Marine, S. A., 682 at 805 (emphasizing that the "deception was clearly not an attempt to influence the court's ultimate decision on the merits"); accord Broyhill Furn. Indus., Inc. v. Craftmaster Furn. Corp., 12 F.3d 1080, 1086-87 (Fed. Cir. 1993) (although a party knowingly withheld material and thereafter sought enforcement of a fraudulently obtained patent, there was no fraud on the court because the fraudulent evidence used to obtain the patent from the patent office was not submitted to the court, so the court itself was not the victim of fraud).

Moreover, plaintiff's allegations that Gattolin's sworn deposition testimony in the 1997 Action constituted perjury do not "show more than perjury or nondisclosure of evidence."

Estate of Stonehill, 660 F.3d at 445.  The Ninth Circuit has repeatedly held that perjury by a witness alone cannot amount to fraud on the court.  See id.; In re Levander, 180 F.3d 1114, 1119 (9th Cir. 1999) ("[P]erjury by a party or witness, by itself, is not normally fraud on the court.").

Plaintiff also admits that he, and not the court, determined that the Third Request would no longer be part of the litigation.  (FAC ¶ 102.)  Plaintiff made the strategic decision to enter into a settlement waiving his right to appeal in exchange for defendants' waiver of their costs bill.  (Id. ¶ 60.) The Ninth Circuit has held that "Rule 60(b) is not intended to remedy the effects of a deliberate and independent litigation decision that a party later comes to regret through second thoughts."  Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1099 (9th Cir. 2006).

Plaintiff's allegations regarding Gattolin's perjury therefore fail to meet the high threshold required to state a plausible claim of fraud on the court.  Even if Gattolin's alleged perjury, had it occurred, worked an injustice, it did not work a "grave miscarriage of justice."  Appling, 340 F.3d at 780.

There is also no allegation that counsel of record for the government in the 1997 Action had any reason to suspect that Gattolin possessed or knew the whereabouts of the pictures. Plaintiff in fact emphasizes that he is not alleging "that the Assistant United States Attorney who handled the defense had any information there was a problem with the veracity of the verified evidence from NTSB personnel that was filed with this Court." (Pl.'s Opp'n at 4 (Docket No. 19).)

1           While Mackall was employed by NTSB's Office of the
2 General Counsel, she served only as a witness and did not handle
3 the defense of the 1997 Action.  The Ninth Circuit has
4 recognized, however, that "fraud upon the court includes both
5 attempts to subvert the integrity of the court and fraud by an
6 officer of the court."  Pumphrey v. K.W. Thompson Tool Co., 62
7 F.3d 1128, 1131 (9th Cir. 1995).  It could be argued that
8 Mackall's participation in the 1997 Action "was sufficient to
9 render [her] an officer of the court."  See id. (holding that the
10 participation of a party's general counsel who did not enter an
11 appearance in the action was nonetheless "sufficient to render
12 him an officer of the court").

13           Plaintiff does not, however, allege that Mackall
14 committed perjury in the 1997 Action.  He states only that
15 Mackall's declaration was inconsistent with Gattolin's sworn
16 testimony and that she had failed to appear for her deposition
17 due to a family illness.  (FAC ¶¶ 29-31.)  Even assuming Mackall
18 knew that Gattolin or another NTSB employee had the photographs,
19 non-disclosure by an officer of the court or perjury by or
20 suborned by an officer of the court may amount to fraud on the
21 court only if it was "so fundamental that it undermined the
22 workings of the adversary process itself."  Estate of Stonehill,
23 660 F.3d at 445.  Non-disclosure by an officer of the court does
24 not rise to this level if it had a "limited effect on the
25 district court's decision" and the withheld information would not
26 have "significantly changed the information available to the
27 district court."  Id. at 446.

28           Even if Mackall were considered an officer of the

court for purposes of the 1997 Action, any alleged perjury regarding plaintiff's Third Request would have had at most only a limited effect on the court's 1998 Order because, as discussed above, the Third Request was neither before nor considered by the court.  Any alleged non-disclosure or perjury by Mackall thus cannot amount to a "'grave miscarriage of justice,' and a fraud that [was] aimed at the court."  Appling, 340 F.3d at 780 (quoting Beggerly, 524 U.S. at 47).

Nor can plaintiff allege fraud on the court based on his inability to take Mackall's deposition.  Plaintiff alleges he "did not press the matter of taking Attorney Mackall's deposition on a later date" because the Magistrate Judge had imposed strict discovery limitations on the Washington, D.C. depositions.  (FAC ¶ 31.)  In the court's December 3, 1997 Order denying plaintiff's request for reconsideration of the Magistrate Judge's denial of plaintiff's motion to compel discovery responses, the court noted that "the discovery limitations imposed by the Magistrate Judge were primarily due to the fact that plaintiffs noticed several depositions on the last day for discovery."  (1997 Action, Docket No. 83.)

Plaintiff had the opportunity to challenge on appeal the court's denial of his request for reconsideration and any denials for an extension of time to conduct Mackall's deposition.  Plaintiff instead elected to forgo the normal procedures of litigating the issue on appeal by stipulating to a waiver of his right to appeal.  Allowing plaintiff to knowingly relinquish his right to appeal and seek relief now would erroneously allow "fraud on the court" to "become an open sesame to collateral

attacks." Oxxford Clothes XX, Inc. v. Expeditors Int'l of Wash., Inc., 127 F.3d 574, 578 (7th Cir. 1997).

As this court has observed in the past, if the court were to simply ignore the language of a settlement agreement, parties to such an agreement could never obtain a reasonable assurance that a settlement was indeed final. See United States v. Sierra Pac. Indus., 100 F. Supp. 3d 948, 964 (E.D. Cal. 2015). A grave miscarriage of justice cannot result from enforcing the clear and deliberate terms of a settlement agreement like the one here.

Accordingly, because plaintiff's allegations fail to state a facially plausible claim of fraud on the court, the court must grant defendants' motion to dismiss plaintiff's claim to set aside the judgment for fraud on the court.

B.   Leave to Amend

"Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, 'dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.'" Somers v. Apple, Inc., 729 F.3d 953, 960 (9th Cir. 2013) (citations omitted). Defendants here have previously filed a motion to dismiss plaintiff's eleventh claim that raised the same arguments as their present motion. (Docket No. 10.)

Plaintiff was granted leave to file his lengthy First Amended Complaint after stating that the amendment "should address [the] issues raised" in defendants' original motion to dismiss. (Docket No. 13 at 2.) Plaintiff thus had a full opportunity to present his best case against defendants

concerning relief under Rule 60(b)(3). The court cannot imagine any further allegations plaintiff could make regarding his Third Request that could remedy the fatal deficiencies noted above.

Accordingly, any proposed amendment would be futile, and the court will not grant plaintiff leave to amend. Cf. Gardner v. Martino, 563 F.3d 981, 992 (9th Cir. 2009) (holding that the district court did not abuse its discretion by denying plaintiff's second request for leave to amend where amendment would be futile); Sapse v. Ferm, 457 F. App'x 654, 655 (9th Cir. 2011) ("The district court did not abuse its discretion by denying leave to amend the complaint to plead fraud on the court because amendment would have been futile.").

IT IS THEREFORE ORDERED that defendants' motion to dismiss plaintiff's eleventh claim seeking to set aside the judgment for fraud on the court (Docket No. 17) be, and the same hereby is, GRANTED, without leave to amend.

Dated:  March 9, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15